Filed 6/18/14  In re Rafael S. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Rafael S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>Rafael S.,<br><br>        Defendant and Appellant. | A140698<br><br>(San Francisco County<br>Super. Ct. No. JW106568) |

Rafael S., born on January 14, 1996, was a minor at the time of the subject proceedings below.  He appeals from the juvenile court's January 3, 2014 order, in which the court denied his request to be placed in the Juvenile Collaborative Re-Entry Unit Program (JCRU), placing him in the Serious Offender Program (SOP) instead, subject to all of the programs and recommendations of JCRU still being provided to him.  The court also ordered him to wear an alcohol monitor, called a "S.C.R.A.M." monitor, on his leg, over his counsel's objection.

Rafael S.'s appellate counsel raises no issues and asks this court for an independent review of the record as required by *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  In accordance with *Wende* and *Anders v. California* (1967) 386 U.S. 738, Rafael S. was informed of his right to file a supplemental brief, which he has not done.  Upon independent review of the record, we conclude no arguable issues are presented for review and affirm the court's order.

1

## DISCUSSION

In his *Wende* brief, Rafael S. incorporates by reference the statement of the case and statement of facts contained in another appeal he filed, A139680, which has been dismissed. That briefing and the record accompanying this appeal indicate that in November 2010, the San Francisco District Attorney filed a petition pursuant to Welfare and Institutions Code section 602, in which it was alleged that Rafael S. had committed a number of criminal offenses.

Several documents contained in the record from this time period indicate Rafael S. had a significant substance abuse problem that included alcohol consumption. A November 2010 detention hearing report states that "mother believes that Rafael engages in substance abuse (ie: marijuana, *alcohol* and cocaine)," which the probation department repeated in a response to a motion for release report a short time later. (Italics added.) A needs and strengths summary by a social worker with the San Francisco AIIM Higher Program states that Rafael S. had a "pervasive substance abuse" problem. The probation department's jurisdictional hearing report states, "[Rafael S.'s] behavior is so out of control with major substance abuse that . . . [he] is most certainty [sic] doomed to recidivate."

In November 2010, Rafael S. admitted to committing felony grand theft and to a weapon-related enhancement; the court sustained these allegations and dismissed the others contained in the petition. The court declared him a ward, ordered out-of-home placement, and put him on formal probation, subject to various conditions.

Rafael S. ran away from his first placement, was arrested, and was detained in juvenile hall. The court approved a change in his medication in an effort to control his extreme agitation. Several months later, he was placed in Normative Youth Services in Wyoming, a highly structured program for male youth. In May 2012, he successfully completed the program and was allowed to return to his mother's home on a trial basis. In November 2012, the court placed Rafael S. with his mother.

2

In late October 2012, Rafael S. was shot eight times in a shooting that took the life of his companion. He was hospitalized in intensive care for about a week, and after that continued to need medical care.

In January 2013, an arrest warrant was issued for Rafael S., who had run away from his mother's home. In February 2013, he was arrested and detained in juvenile hall.

The San Francisco District Attorney filed a second petition pursuant to Welfare and Institutions Code section 602 and shortly thereafter, Rafael S. admitted that he had been in possession of live ammunition, a misdemeanor, and had willfully and unlawfully resisted, delayed, and obstructed a peace officer in the discharge of the officer's duties. The court found these allegations as true and dismissed the others contained in the petition.

The court continued Rafael S.'s detention and ordered that he be placed in an in-state placement. He was placed in a group home on March 28, 2013, but terminated from it a few weeks later because, the probation department reported, he had made several threats against staff, been extremely defiant regarding home rules and responsibilities, said he had bullets with his probation officer's name on them, and threatened to get guns and shoot everybody at the group home.

Rafael S. was placed in juvenile hall and ordered to be detained by the court. For the next several months, the probation department then looked for, but was unable to locate, another in-state or out-of-state placement for him. In November 2013, a contested placement hearing was held. Rafael S. was placed in juvenile hall, to remain there until his 18th birthday on January 14, 2014.

On December 16, 2013, JCRU filed a re-entry plan that contained specific plans and recommendations for Rafael S. that were devised with the participation of Rafael S., his mother, a social worker with the Center on Juvenile and Criminal Justice, a case coordinator, and a court-appointed attorney. The plan was to release him to his mother when he became eligible for release on January 6, 2014. Rafael S. was reported to say he was glad he had been placed in juvenile hall this time, that it had changed him, that he wanted to make his mother proud, wanted a family of his own, and wanted to become a

3

fireman. It was further reported that he had obtained his G.E.D. and was going to begin classes at City College of San Francisco upon his release in January 2014, and would receive referrals that would help him to look for part-time work and obtain therapy and substance abuse assistance, including "wrap around services." The report further stated that, "Rafael understands he will have to wear the S.C.R.A.M. alcohol monitoring system and submit to random UA testing" at the discretion of a JCRU probation officer.

On December 17, 2013, the court, Judge Bolanos presiding, ordered Rafael S. to be released January 6, 2014, and enroll in, and attend, the City College of San Francisco as of January 10, 2014. The matter was continued to January 3, 2014, so that he could appear in Department 3 before Judge Breall, who oversaw JCRU cases, for a JCRU meeting to be conducted. The court also ordered that, if Rafael S. was released before that time, he was to wear both a GPS and S.C.R.A.M. monitor, along with other conditions. Rafael S.'s counsel objected to the S.C.R.A.M. monitor because he did not see "any real history of having any alcohol issues" and thought that wearing a monitor on each leg was "pretty extreme for somebody that is going to be starting college."

Prior to the January 3, 2014, hearing, Rafael S.'s previously filed challenge to Judge Breall pursuant to Code of Civil Procedure section 170.6 became an issue. First, JCRU denied his counsel's request that Rafael S. receive JCRU support in a courtroom outside of the designated collaborative courtroom sessions, stating it was outside the protocol of the JCRU model. Then, apparently because of Rafael S.'s challenge to Judge Breall, his matter was transferred to another judge and department, where a hearing occurred on January 3, 2014.

At that January 3, 2014, hearing, the probation department informed the court that all of the JCRU services that had been recommended could be provided by the SOP, but that the case managers would be different. Rafael S.'s counsel objected to his placement in the SOP program because Rafael S. might have a different probation officer than the one he was familiar with, Rafael S. did not need the "heavy hammer" of the SOP, and he was not a serious offender. Counsel further objected that it was unfair that Rafael S. could not be placed in JCRU because of his challenge to Judge Breall, the only judge

4

who handled JCRU matters, and sought an opportunity to further brief the matter before Judge Bolanos.  Counsel also objected to the S.C.R.A.M. monitor because of "a lack of prior demonstrated alcohol abuse" and R.S.'s medical condition, which was such that adding a device with additional weight would affect his ambulatory issues.

The matter submitted, the court rejected the request of Rafael S.'s counsel to brief the JCRU issue further before Judge Bolanos because it suggested forum shopping, given the tentative ruling that he be placed in the SOP.  The court ordered that Rafael S. would be released on January 6, 2014, and be placed under the supervision of the SOP such that he could benefit from all the programs and recommendations provided by JCRU.  The court also refused to disturb Judge Bolanos's determination that Rafael S. should wear a S.C.R.A.M. monitor, subject to Rafael S. being able to raise any medical evidence before Judge Bolanos if it was detrimental for him to wear it.  The court also ordered that the out-of-home placement order remain in effect in order for Rafael S. to be eligible for "AB12" programs as Rafael S. wanted.

R.S. filed a timely notice of appeal regarding the court's having "reversed Judge Bolanos order from December 17, 2013, regarding minor's participation and receipt of community-based services in the [JCRU]."

## DISPOSITION

Having independently reviewed the entire record, we find no arguable issue and, accordingly, affirm the judgment.

_____
Brick, J.*

We concur:

_____
Kline, P.J.

_____
Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.